UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

COLMAC COIL MANUFACTURING, INC.,

    Plaintiff,

v.

SEABURY AND SMITH, INC., d/b/a MARSH-ADVANTAGE AMERICA-SEABURY & SMITH, INC., a foreign corporation,

    Defendant.

No. CV-09-146-LRS

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Defendant's Motion For Summary Judgment (ECF No. 60). Oral argument was heard on September 1, 2011. James B. King, Esq., argued for Plaintiff. Dwain M. Clifford, Esq., argued for Defendant.

## I. BACKGROUND

Refrigeration equipment manufactured and sold by Colmac Coil Manufacturing, Inc. (Colmac) was installed at a C & S Wholesale Grocers, Inc., facility in Hawaii (C & S). An ammonia leak occurred in the refrigeration equipment, resulting in substantial damage to food stored in the facility. C & S initiated a products liability lawsuit against Colmac and Gartner Refrigeration and Manufacturing, claiming damages of approximately $3,400,000. Colmac's liability insurer, Wausau, retained Kunio Kuwabe, an insurance defense and civil litigation

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 1**

attorney in Hawaii, to defend Colmac in the suit. At the same time, Wausau denied that it owed any coverage because Colmac's policy contained a "Total Pollution Exclusion" clause. Wausau filed a declaratory judgment action in the Eastern District of Washington, claiming that Colmac did not have coverage for the Hawaii products liability lawsuit. Jeff Supinger, a Spokane attorney, represented Colmac in the matter and advised Colmac it would likely lose the declaratory judgment action.

Before Wausau's declaratory judgment claim could be decided, the Hawaii lawsuit was settled for $1.15 million, with Colmac paying $450,000 of the total. Colmac initially contested liability, but chose to settle based on the advice of its attorneys regarding likelihood of success, both in the products liability case and in the declaratory judgment action, and the risk involved if it were to lose both.

Seabury & Smith, Inc. (Seabury) brokered Colmac's insurance policy with Wausau. Colmac alleges Seabury's professional negligence resulted in incomplete insurance coverage, proximately causing it damages including its attorney fees and costs in the products liability lawsuit and the declaratory judgment action, as well as the amount of the settlement of the products liability lawsuit which it paid out of its own pocket ($450,000). In its motion for summary judgment, Seabury contends Colmac has the burden of proving the settlement amount was reasonable and that it cannot meet this burden because it failed to designate any expert to testify about the reasonableness of the settlement. As such, Seabury contends it should be awarded judgment on Plaintiff's negligence claim.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R.

**ORDER DENYING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

### III. DISCUSSION

When an insurance broker's negligence results in a loss for his or her client, the broker is liable in money damages for that loss. *AAS-DMP Mgmt., L.P. Liquidating Trust v. Acordia Northwest, Inc.*, 115 Wash. App. 833, 838-39, 63 P.3d 860 (2003). Where an insurance broker has a special relationship with a client, the broker has an enhanced duty to the client beyond the typical agency

duty to act in good faith and carry out instructions. *Id.* at 839. Where a special relationship exists, an agent must fully advise the client regarding the availability and adequacy of coverage. *McClammy v. Cole*, 158 Wash. App. 769, 774, 243 P.3d 932 (2010). "'A special relationship exists if (1) the agent holds himself out as an insurance specialist and receives additional compensation for consulting and advice, or (2) there is a long-standing relationship, some type of interaction on the question of coverage, and the insured relied on the agent's expertise to the insured's detriment.'" *Id.* (quoting *Lipscomb v. Farmers Ins. Co. of Washington*, 142 Wash. App. 20, 28, 174 P.3d 1182 (2007)).

Liability for broker malpractice, like other torts, requires Colmac to prove: (1) Seabury had a duty of care to protect Colmac against certain risks, (2) Seabury breached that duty, and (3) the breach proximately caused (4) an injury to Colmac. *Peterson v. Big Bend Ins. Agency, Inc.*, 150 Wash. App. 504, 515, 202 P.3d 372 (2009). A plaintiff needs to show that but for the defendant's negligence, the plaintiff would have purchased insurance covering at least some part of the suffered loss. *American Commerce Ins. Co. v. Ensley*, 153 Wash. App. 31, 43, 220 P.3d 215 (2009) (Defendant's breach of duty was not a proximate cause of plaintiff's inadequate coverage because plaintiff knew additional coverage was available). Alternatively, an insurance broker's conduct is not the proximate cause of an injury if the injury would have occurred regardless of that conduct. *Sternoff Metals Corp. v. Vertecs Corp.* 39 Wash. App. 333, 338-39, 693 P.2d 175 (1984) (Breach of duty by defendant could not be proximate cause of loss because appropriate coverage would not have been available to plaintiff regardless of defendant's conduct).

While Colmac clearly bears the burden of proving it was injured by Seabury's alleged negligence, the court is not persuaded that attendant thereto, Colmac is required to prove the reasonableness of the underlying settlement

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 4**

agreement by way of expert testimony. There simply is no Washington authority holding that in all cases where there is a settlement in underlying litigation which then prompts a subsequent action for damages related to the underlying litigation, the party seeking those damages is obligated to prove the reasonableness of the settlement by way of expert testimony. There is Washington authority suggesting that in certain factual scenarios involving an underlying settlement, expert testimony may be required. Those scenarios, however, are not present in the captioned matter. *Chausee v. Maryland Casualty Company*, 60 Wn.App. 504, 803 P.2d 1339 (1991), involved a consent judgment with a covenant not to execute and a claim by the assignee of the insured that the amount of the consent judgment presumptively established the amount of damages. The case before this court does not involve a consent judgment (an "agreed judgment") with a covenant to execute. It involves a settlement, and furthermore, there is no assertion by Plaintiff that the settlement amount it paid in the underlying litigation ($450,000) presumptively establishes the amount of its damages. The jury in the captioned matter will not be instructed that the underlying settlement was presumptively reasonable or that the settlement amount paid by Plaintiff presumptively establishes the amount of its damages. If a jury finds the Defendant was negligent, it will determine whether that negligence caused injury to the Plaintiff and what is a reasonable amount of damages to compensate Plaintiff for that injury.

Consent judgments which include a covenant not to execute are problematic because they raise "the specter of collusive or fraudulent settlements." *Besel v. Viking Insurance Company of Wisconsin*, 146 Wn.2d 730, 738, 49 P.3d 887 (2002). Therefore, a plaintiff has the burden of proving a covenant judgment is reasonable and this serves "as a check upon the inherent temptation for the settling parties to collude and settle for an unreasonably high amount." *Unigard Ins. Co. v. Mutual of Enumclaw Ins. Co.*, 160 Wash. App. 912, 923, 250 P.3d 121 (2011).

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 5**

"[A]n insured's incentive to minimize the amount of a judgment will vary depending on whether the insured is personally liable for that amount." *Besel*, 146 Wn.2d at 737-38. In the captioned matter, the risk of a collusive or fraudulent settlement is not as great. Colmac (the insured) paid $450,000 out of its own pocket and Wausau (the insurer) paid $625,000, notwithstanding its declaratory judgment action at the time which held out the possibility it would not be legally obligated to pay anything. The insured in *Chausee* who stipulated to a judgment against him for $7.5 million with a covenant not to execute and then assigned his claims against his insurer, paid nothing out of his own pocket. A similar situation existed in *Besel*. Seabury may be entitled to present evidence and argue to a jury there was collusion or fraud involved in the settlement.[1] This court makes no finding as to the possible existence of collusion or fraud.

Although Defendant asserts it is not seeking to now have Plaintiff litigate the underlying products liability case in the captioned matter, the court is not so persuaded. In its summary judgment papers, Defendant repeatedly refers to the need for Plaintiff to establish its "actual liability" in the underlying case through numerous expert opinions on a variety of legal and engineering topics. Obviously, Plaintiff's "actual liability" was not determined in the underlying case because Plaintiff determined that its potential liability was significant enough that it should arrive at a settlement. As part of its proximate cause and damages determinations in the captioned matter (assuming Defendant is found negligent in the first instance), a jury will assess the reasonableness of Plaintiff's assessment regarding its potential liability in the underlying case. Plaintiff settled that case to avoid a determination as to its "actual liability." If a plaintiff knows there is a significant

---

[1] To the extent those are affirmative defenses which needed to be pled and which were not, there would be an issue regarding waiver of the same.

**ORDER DENYING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

likelihood it will have to subsequently litigate its "actual liability," notwithstanding a settlement, it will have considerably less motivation to settle. This is contrary to the policy of encouraging settlements to save time and money for all involved.

Colmac is required to prove its damages, but the court disagrees with Defendant's assertion that "in a broker-malpractice claim arising from an underlying settlement agreement that was paid partially by the insured/plaintiff, this proof necessary requires expert testimony as to the reasonableness of the settlement." (ECF No. 70 at p. 3). On the issue of damages, Defendant will have an opportunity to present evidence and argue to a jury that Plaintiff did not reasonably assess its risk in the underlying products liability case and therefore, Defendant did not proximately cause Plaintiff's injury, and to the extent there is proximate cause, the amount of Plaintiff's damages should be considerably less than the amount for which Plaintiff settled the underlying case. In its Answer (ECF No. 6 at p. 14), Defendant pled as an affirmative defense that "Colmac unreasonably agreed to a settlement of the claims brought by C & S in the Hawaii lawsuit." Of course, the amount Plaintiff paid pursuant to the settlement is only a portion of the damages it claims. It also claims it is entitled to the fees and costs it expended in defending and settling the underlying products liability case and the declaratory judgment action. Also pled as an affirmative defense by Defendant is that Colmac failed to reasonably settle its coverage claims against Wausau. (ECF No. 6 at p. 14). Defendant bears the burden of proof with regard to these comparative negligence/avoidable consequences affirmative defenses.

### IV. CONCLUSION

For the reasons set forth above and stated at the conclusion of oral

**ORDER DENYING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

argument, Defendant's Motion for Summary Judgment (ECF No. 60) is **DENIED**. Plaintiff is not required to present expert proof in order to establish that it was injured and sustained damages as a result of any negligence committed by the Defendant. At this time, the court makes no determination with regard to the admissibility of evidence which Plaintiff and Defendant intend to present at trial regarding the issues of proximate cause and/or damages.

    **IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies of it to counsel of record.

    **DATED** this   12th   day of September, 2011.

*s/Lonny R. Suko*

LONNY R. SUKO
United States District Judge

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 8**